IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| NANCY WOMACK, ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No. _____ |
| ) | Division \_\_\_\_ |
| -vs- ) | |
| ) | |
| CAREER EDUCATION CORPORATION ) | |
| ) | |
| AND ) | |
| ) | |
| SANFORD BROWN COLLEGE, INC. ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |
| **HOLD SERVICE** ) | |

**PETITION**

COMES NOW Plaintiff, by and through counsel, and for her Petition against Defendants, alleges and states as follows:

**FACTS COMMON TO ALL COUNTS**

1. Plaintiff Nancy Womack is an individual who resides in Florissant, Missouri.

2. Defendant Sanford Brown College, Inc. ("SBC") is a Delaware corporation in good standing in the State of Missouri, currently conducting business at 1345 Smizer Mill Road in Fenton, Missouri.

3. Defendant Career Education Corporation ("CEC") is a Delaware corporation that merged with Whitman Education Group, Inc. in 2003. It currently owns and operates SBC. Its corporate headquarters are located at 2895 Greenspoint Parkway, Suite 600,

Hoffman Estates, IL 60195. It is traded on the NASDAQ National Market under the symbol CECO.

4. The business of Defendants CEC and SBC is the operation and ownership of proprietary, for profit, technical institutions.

5. The claims asserted by Plaintiff in this case were originally asserted in the case of *Melissa Bergman White, et al. v. CEC, et al.*, Case #07SL-CC01514, filed on or about December 28, 2007, in the Circuit Court of St. Louis County, Missouri.

6. The claims asserted by Plaintiff in this case were dismissed without prejudice on or about May 28, 2010. Plaintiff's claims are thus re-filed within one year of the prior dismissal without prejudice.

## GENERAL ALLEGATIONS REGARDING THE CORPORATE DEFENDANTS' ONGOING PATTERN AND PRACTICE OF DECEPTIVE CONDUCT

7. Defendants have intentionally engaged in a pattern and practice of making certain fraudulent misrepresentations, material omissions and/or unfair or deceptive conduct to the Plaintiff and others as more particularly described below.

8. The admissions advisors and other staff at each CEC location are expected to utilize a myriad of sales and marketing techniques in order to get a prospective student to enroll.

9. Student recruitment at CEC/SBC is driven by high-pressure sales techniques and strategies.

10. CEC makes the policies, provides the training, and sets the enrollment quotas for the admissions personnel at its schools.

11. These sales persons are trained to create a "sense of urgency," to "overcome

objections," and where possible to sign the prospective student up on the first in-person visit.

12. These sales persons are provided explicit training from CEC in how to close the sale and enroll students in the few and limited programs offered at the SBC locations, including those at issue in this case.

13. These sales persons are reprimanded, disciplined, and/or terminated for failing to meet enrollment quotas placed on them by CEC/SBC.

14. A former CEC/SBC President of the Hazelwood, Missouri location has testified that: (a) CEC/SBC's emphasis on enrolling students and the income numbers totally outweighed any consideration exhibited for quality of education; (b) CEC/SBC's over concern for finances seemed to force admissions people not to tell the truth about what the outcomes were going to be for the students and about what they could expect upon graduation; (c) CEC/SBC admissions advisors were sales persons with tremendous pressure placed on them to get prospective students to enroll; and, (d) CEC/SBC admissions advisors commonly misrepresented matters to prospective students.

15. A former CEC/SBC director of admissions for the North Kansas City school location has testified to the following: (a) the high pressure sales nature of admissions practices at CEC/SBC; (b) the training of CEC/SBC in overcoming a potential student's objections and getting the enrollment (closing the sale) on the first visit; and, (c) the training in weekly meetings with CEC Executives on the psychology of doing things that would subliminally manipulate the potential student to enroll.

16. A former CEC/SBC assistant director of admissions for the North Kansas City school location has testified to the following: (a) CEC/SBC expected all admissions advisors to meet a certain numerical quota in enrolling students; (b) CEC/SBC trained admissions advisors to engage

in bait and switch tactics; (c) CEC/SBC trained admissions advisors to gain the trust of the potential student and to expect that the potential student was going to rely upon the oral representations made during the admissions process; (d) CEC/SBC trained admissions advisors to get an enrollment contract signed by the potential student on the very first visit; and, (e) that the experienced CEC/SBC admissions advisors at the North Kansas City school location told management that they felt like they had been pretty much trained to sell the programs through the same type of misrepresentations that had been the subject of the lawsuit at other CEC schools mentioned in a 60 Minutes program.

17. Pursuant to this pattern and practice, Plaintiff was induced by Defendants' intentional, willful, and malicious misrepresentations, omissions, and deceptive conduct to apply for student loans, purchase books, supplies, equipment, and to enroll in SBC and pay tuition.

18. Plaintiff used her own funds and/or student loans to attend SBC.

## COUNT 1
## FRAUDULENT MISREPRESENTATION

19. Plaintiff incorporates by reference the foregoing statements and allegations, as well as the statements and allegations from Counts II and III, as though fully set forth herein.

20. In or around March, 2004, Nancy Womack submitted her SBC Enrollment Application for the Medical Coding & Billing Program at SBC's Fenton location.

21. Prior to submitting this application, she met with representatives of Defendants, including but not limited to Admission Representative Chris Rodriguez, Financial Aid Advisors, and other personnel in the Admissions and Financial Aid Office.

22. Beginning in or around March, 2004, and continuing thereafter, Admissions

Representative Chris Rodriguez and other representatives of Defendants made the following misrepresentations to Nancy Womack about the school and curriculum upon which Nancy Womack relied:

(a) SBC Credit hours were transferable to other colleges and universities;

(b) The program was accredited and she would be able to sit for the RHIT and/or RHIA Certification Examinations upon graduation;

(c) The instructors were experienced in CPT and ICD-9 coding and well qualified in teaching the college level courses in which she was enrolling;

(d) She could reasonably expect an actual starting salary of at least $30,000, and with the chance to make $50,000 per year;

(e) There were a limited number of seats open in the program that were filling up quickly and she needed to sign up as soon as soon as possible or would be left out; and,

(f) That the SBC program was accredited by AHIMA and/or other accrediting bodies such that Plaintiff would be able to obtain certificates and licenses necessary to work in the medical coding and billing field.

23. The foregoing representations made by Defendants through its agents and representatives were false.

24. On information and belief, the aforementioned admissions representatives, financial aid representatives and other personnel were acting on behalf of, and serving the business interests of, the corporate Defendants named herein in making each of the aforesaid false representations.

25. Defendants knew each of the foregoing representations was false, or Defendants did not know whether each of the representations was true or false but represented that each was true.

26. Defendants intended that Plaintiff rely upon said representations and omissions and thus enroll in SBC.

27. The fraudulent misrepresentations and omissions made by Defendants were material to the decision of Plaintiff to enroll in SBC.

28. But for the false, fraudulent and misleading statements and omissions, Plaintiff would not have enrolled in this institution.

29. Plaintiff relied on each of the aforesaid misrepresentations and omissions in enrolling in SBC, and in so relying each was using ordinary care.

30. As a direct result of such fraudulent misrepresentations and omissions, Plaintiff was thereby damaged.

31. Plaintiff was thereby damaged in the amount paid by and/or on behalf of Plaintiff for tuition, fees, books, supplies, equipment and any further incidental charges and fees together with interest Plaintiff has paid, become obligated to pay, and/or will become obligated to pay on school loans.

32. Defendants' conduct was outrageous, and showed complete indifference to or conscious disregard for the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount that will serve to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiff prays actual damages against Defendants in an amount that is fair and reasonable, including all monies expended by and/or on behalf of Plaintiff for tuition, fees, books, supplies, equipment and any further incidental charges, fees, together with interest Plaintiff has paid, become obligated to pay, and/or will become obligated to pay on school loans,

for punitive damages in an amount sufficient to punish Defendants and to deter Defendants and others from like conduct, and for such further relief the Court deems just and proper.

## COUNT II
## FRAUD BY CONCEALMENT AND OMISSION

33. Plaintiff incorporates by reference the foregoing statements and allegations, as well as the statements and allegations from Count III, as though fully set forth herein.

34. In addition to the fraudulent misrepresentations set forth above, Plaintiff was damaged by Defendants omitting to disclose facts that, had they been known, would have convinced Plaintiff to reject Sanford Brown College.

35. Defendants had a duty to disclose to Plaintiff:

    a.    That Defendants knew that starting salary figures reflected in various websites such as the US Department of Labor and other websites did not truly reflect the average starting salaries being paid to graduates from SBC.

    b.    That Defendants knew the actual starting salaries of most, if not all of its graduates for at least a one year period prior to Plaintiff's enrollment.

    c.    That despite the placement department maintaining a database with actual starting salaries for graduates in the fields of study pursued by Plaintiff, Defendants chose to conceal this data, even from its own Directors of Admission.

    d.    That Defendants instructed their Admissions personnel to direct prospective students to various websites as a means of misleading these students as to the true starting salaries of SBC graduates.

    e.    Accurately as to the starting salaries of SBC graduates.

    f.    Accurately of the placement rates of SBC graduates.

    g.    That most SBC graduates had not obtained full-time jobs in their field of study.

    h.    That SBC had a poor reputation in the local St. Louis Area and Business

        Community.

    i.    That the only institutions that Defendants knew would accept credit hours earned at SBC were those institutions that had entered into articulation agreements with SBC.

    j.    That most SBC credit hours would not transfer to any other area college or university.

    k.    That an SBC degree or certificate would most likely not serve as a basis for obtaining a higher degree at another college or university.

    l.    That tuition increases had occurred virtually every year and would likely occur during the following years as well.

    m.    That there would be excessive amount required in loan repayment.

    n.    That there would not be the ability to defer and consolidate some of the loan obligations.

    o.    That Defendants did not seek the best rates available for students on their loans.

    p.    That Admissions Representatives were given sales quotas with respect to new student enrollment.

    q.    That Admissions Representatives were subjected to pressure, criticism, and job termination if the predetermined quotas were not satisfied.

    r.    That Admissions Representatives' quotas were based upon figures determined by financial forecasts and budget calculations which had not relationship to the education of the students, but were purely profit driven.

36.    Defendants' failed to disclose to Plaintiff each of the items of information set forth in paragraph 35a-r.

37.    Each of the foregoing omissions of fact by Defendants through its agents and representatives were material to Plaintiff.

38.    On information and belief, the aforementioned admissions representatives, financial

-8-

aid representatives and other personnel were acting on behalf of, and serving the business interests of, all Defendants named herein in failing to disclose said material information.

39. Defendants were in a position of having specific knowledge unavailable to Plaintiff.

40. Defendants were in a position of trust such that Defendants were aware that Plaintiff trusted them for advice and believed them to have been acting in Plaintiff's best interests.

41. Defendants intended that Plaintiff rely upon said representations and omissions and thus enroll in SBC.

42. The fraudulent omissions made by Defendants were material to the decision of Plaintiff to enroll in SBC.

43. But for the fraudulent omissions, Plaintiff would not have enrolled in this institution.

44. Plaintiff relied on all of the aforesaid misrepresentations and omissions in enrolling in SBC, and in so relying was using ordinary care.

45. As a direct result of such fraudulent misrepresentations and omissions, Plaintiff was thereby damaged.

46. Plaintiff was thereby damaged in the amount paid by and/or on behalf of Plaintiff for tuition, fees, books, supplies, equipment and any further incidental charges and fees together with interest Plaintiff has paid, become obligated to pay, and/or will become obligated to pay on school loans.

47. Defendants' conduct was outrageous, and showed complete indifference to or conscious disregard for the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount that will serve to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiff prays actual damages against Defendants in an amount that is

fair and reasonable, including all monies expended by and/or on behalf of Plaintiff for tuition, fees, books, supplies, equipment and any further incidental charges, fees, together with interest Plaintiff has paid, become obligated to pay, and/or will become obligated to pay on school loans, for punitive damages in an amount sufficient to punish Defendants and to deter Defendants and others from like conduct, and for such further relief the Court deems just and proper.

## COUNT III
## VIOLATION OF THE MERCHANDISING PRACTICES ACT

48. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

49. Plaintiff purchased services primarily for personal purposes, and thereby suffered an ascertainable loss of money as the result of the use and employment by Defendants of methods, acts and practices declared unlawful pursuant to Revised Missouri Statutes, Section 407.010 et seq.

50. Each of the foregoing misrepresentations, omissions and concealments by Defendants were relied upon by Plaintiff in deciding to enroll in Defendants' institution, and in expending monies for tuition, books, and incidental fees, and in devoting their time to Defendants' curriculum, which, had Plaintiff known the truth, would have been devoted to the pursuit of employment, or pursuing a legitimate education at another college or university.

51. Plaintiff was thereby damaged in the amount paid by and/or on behalf of Plaintiff for tuition, fees, books, supplies, equipment and any further incidental charges and fees together with interest Plaintiff has paid, become obligated to pay, and/or will become obligated to pay on school loans. Section 407.025 R.S.Mo., gives Plaintiff the right to recover actual damages sustained by the actions of Defendants in violations of the Missouri Merchandising Practices Act,

Section 407.010 R.S.Mo. et seq. Said section further entitles Plaintiff to recover punitive damages, reasonable attorney fees, costs, treble damages and such other equitable action and relief as the Court deems necessary and proper.

52. Defendants' actions were outrageous, and showed complete indifference to or conscious disregard for the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount that will serve to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiff prays actual damages against Defendants in an amount that is fair and reasonable, including all monies expended by or on behalf of Plaintiff for tuition, books, supplies, equipment and all further incidental charges, fees, together with interest Plaintiff has paid, become obligated to pay, and/or will become obligated to pay on school loans, for all other actual damages, for punitive damages in amount sufficient punish Defendants and to deter like conduct in the future, for costs and attorneys' fees, and for any further relief the Court deems just and proper.

## REQUEST FOR JURY

COMES NOW Plaintiff, by and through her attorney of record, and hereby requests trial by jury.

Respectfully submitted,

HUBBARD & ARDEBILI, L.L.C.

By: _____
Dirk Hubbard, Mo #37936
Amir Ardebili, Mo. #61520
256 NE Tudor Rd.
Lee's Summit, Missouri 64086
Telephone:     (816) 600-2614
Fax:           (816) 600-2633